ORAL ARGUMENT
SCHEDULED MAY 8, 2026

**25-4033**

# United States Court of Appeals
# for the Fourth Circuit



UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

-against-

CHRISTOPHER KENJI BENDANN,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

# REPLY BRIEF FOR DEFENDANT-APPELLANT
# CHRISTOPHER KENJI BENDANN

ALLEN H. ORENBERG, ESQ.
THE ORENBERG LAW FIRM, LLC
200-A Monroe Street, Suite 233
Rockville, Maryland 20850
(301) 807-3847
aorenberg@orenberglaw.com

*Counsel for Defendant-Appellant*



Dick Bailey Service INC
APPELLATE SERVICES
www.dickbailey.com

# **TABLE OF CONTENTS**

*Page*

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *iii*

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  The District Court Abused its Discretion by Denying Mr. Bendann's
    Motion to Determine Mr. Bendann's Competency . . . . . . . . . . . . . . . . . . . 1

    A.  The Government's Challenges to "Reasonable Cause" are
        Unpersuasive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.  The Government's Non-Exclusive Factors Ignore Other Evidence
        in the Record . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    C.  The Government's Other Arguments are Unpersuasive . . . . . . . . . . . . 3

II.  The District Court Erred in Denying Mr. Bendann's Motion to
     Suppress Evidence Obtained from Electronic Devices with the
     Passcode 070184 because Detective Markel Conducted the
     Functional Equivalent of Interrogation in Violation of Miranda . . . . . . . . . 4

    A.  Mr. Bendann Exercised his Fifth Amendment Right to an
        Attorney . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B.  Even under a *De Novo* Standard of Review, Mr. Bendann
        Exercised his Right to an Attorney . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.  Mr. Bendann Communicated his Desire to have his
        Attorney Present Sufficiently Clearly that Detective
        Markel Understood it . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.  Detective Markel Engaged in the Functional Equivalent of
        Interrogation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

E.   Because Detective Markel saw Mr. Bendann's Passcode,
the Act of Entering the Passcode in front of Detective
Markel was Testimonial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

F.   Entering the Passcode was not Voluntary because
Mr. Bendann was in Custody and Functionally
Interrogated . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.   The District Court did not make any Factual Findings about the
Inevitable Discovery Doctrine . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

IV.   The Government Withheld the Statement of a Trial
Witness—Mr. Halpert—in Violation of Jencks . . . . . . . . . . . . . . . . . . . . . 11

A.   Mr. Bendann's Defense Counsel Laid a Foundation . . . . . . . . . . . . . 11

B.   Even if Not, a Limited Remand Would Preserve
Judicial Resources . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.   The District Court Abused its Discretion Allowing Inflammatory
Testimony from the Victim's Parents at Mr. Bendann's Sentencing . . . . . 13

A.   Statutory and Case Law Permitting Individuals Other than
the Victim to Testify only Apply for Deceased Victims . . . . . . . . . . 13

B.   The Parents Imputed Ill-Will onto Mr. Bendann's Exercise
of his Constitutional Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VI.   Mr. Bendann Suffered the Highest Form of Prejudice: the Statutory
Maximum Sentence of Incarceration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATION PURSUANT TO Fed. R. App. P. 32(a)(7)(B) and (C) . . . . . . 17

## TABLE OF AUTHORITIES

***Cases***                                                                                                                ***Page(s)***

*Coleman v. Singletary*,
    30 F.3d 1420, 1422-1423 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Correll v. Thompson*,
    63 F.3d 1279, 1286 n.6 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Emspak v. United States*,
    349 U.S. 190, 194 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Grueninger v. Dir., Va. Dep't of Corr.*,
    813 F.3d 517, 529 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Murray v. Quarterman*,
    243 F. App'x 51, 54 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Payne v. Tennessee*,
    501 U.S. 808, 811 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rhode Island. v. Innis*,
    446 U.S. 291, 301 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Sechrest v. Ignacio*,
    549 F.3d 789, 797 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Strickland v. Washington*,
    466 U.S. 668, 688 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Collins*,
    834 F. App'x 537, 541 (11th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Davis*,
    61 F.3d 291, 304 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*iii*

*United States v. Fulks*,
  454 F.3d 410, 435-36 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*United States v. General*,
  278 F.3d 389, 397 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Hemphill*,
  622 Fed. Appx. 271, 272 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Johnson*,
  400 F.3d 187, 195 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Mason*,
  52 F.3d 1286, 1293 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Moon*,
  513 F.3d 527, 543 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*United States v. Oloyede*,
  933 F.3d 302, 309 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Patane*,
  542 U.S. 630, 644 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Payne*,
  501 U.S. 808, 825 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*United States v. Smith*,
  31 F.3d 1294, 1302 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Walker*,
  272 F.3d 407, 413-414 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*West v. Grounds*,
  708 F. App'x 476, 478 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**_Statutes/Regulations/Miscellaneous_**

18 U.S.C. § 3553(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. § 3553(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 3661. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. § 4241(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3

## DISCUSSION

### I.     The District Court Abused its Discretion by Denying Mr. Bendann's Motion to Determine Mr. Bendann's Competency

It was an abuse of discretion for the district court not to order a psychiatric evaluation before determining that a hearing was not necessary under 18 U.S.C. § 4241(b).

### A.     The Government's Challenges to "Reasonable Cause" are Unpersuasive

The government tries to downplay the facts establishing "reasonable cause." *See* Gov. Resp. Br. at 24-27 (the section of the government's brief marked by the number 1).

First, the government argues that the timing of the competency motion—on the morning of the first day of trial—suggests that it lacks merit. *See* Gov. Resp. Brief at 24-26. But this argument ignores the fact that Mr. Bendann's counsels asked the jail to screen Mr. Bendann for suicidal ideation a week *before* trial. And the government's argument implies that there is a correct time for mental illness to manifest, which is unsupported by a citation to medical literature.

Second, the government argues that because Mr. Bendann was lucid as to his surroundings in the District Court's colloquy, Mr. Bendann was able to assist properly in his defense. *See* Gov. Resp. Brief. at 26. But this Court reversed a

1

district court for that same reason. *See United States v. Mason*, 52 F.3d 1286, 1293 (1995) (holding that a defendant who "appeared competent" and displayed "mental alertness and understanding" during the trial still required a competency hearing).

### B. The Government's Non-Exclusive Factors Ignore Other Evidence in the Record

Proposing other factors that the government uses to challenge if "reasonable cause" was met, (the section of the government's brief marked by the number 2), the government argues that Mr. Bendann was competent based on his lack of "history of irrational behavior," "demeanor in every court appearance," and lack of "prior medical opinion." *See* Gov. Resp. Br. at 27-30. But "history of irrational behavior" and "demeanor in court appearance" are not exclusive factors to the determination of whether to order a hearing under 18 U.S.C. § 4241(b). *See United States v. General*, 278 F.3d 389, 397 (2002) ("we look to *all* of the record evidence pertaining to the defendant's competence") (emphasis added); *see also United States v. Hemphill*, 622 Fed. Appx. 271, 272 (2015) (calling them "factors" and not "exclusive factors"). And this Court reversed a District Court for overreliance on those two factors. See *Mason*, 52 F.3d at 1293. And the lack of a "prior medical opinion" is exactly what Mr. Bendann is appealing here: the District Court should have ordered a medical opinion to assess Mr. Bendann's competency.

### C.     The Government's Other Arguments are Unpersuasive

The government then addresses Mr. Bendann's remaining arguments. *See* Gov. Resp. Br. at 30-35 (the section of the government's brief marked by letter C).

First, the government argues that Mr. Bendann's suicidal ideation was not serious because it was not "longstanding." *See* Gov. Resp. Br. at 30. But this ignores that mental illness may be acute or chronic. *See* Joshua Feriante & Naveen P. Sharma, *Acute and Chronic Mental Health Trauma* (Aug. 2, 2023), https://www.ncbi.nlm.nih.gov/sites/books/NBK594231/ ("One categorization for trauma experiences is distinguishing between acute and chronic traumas."). The statute 18 U.S. Code § 4241(b) does not distinguish between acute and chronic mental illness.

Second, the government argues that the government did not believe that Mr. Bendann was suffering from a mental illness, but was "curious" if Mr. Bendann "was planning to show up today." *See* Gov. Resp. Br. at 31. Mr. Bendann reads the record differently—the government was wondering if suicidal ideation would get the better of Mr. Bendann, and possibly prevent his appearance in court altogether.

Third, the government argues that suicidal ideation is not enough to warrant a psychiatric examination, and that other courts have determined that defendants were able to assist in their defense despite suicide attempts. *See* Gov. Resp. Br. at 33, n. 3. Remarkably, all but one of the cases that the government cites for this

3

proposition are nonprecedential out-of-jurisdiction opinions. *See United States v. Collins*, 834 F. App'x 537, 541 (11th Cir. 2020); *West v. Grounds*, 708 F. App'x 476, 478 (9th Cir. 2018); *Murray v. Quarterman*, 243 F. App'x 51, 54 (5th Cir. 2007). And the only precedential out-of-jurisdiction opinion is from this country's most conservative geographic area from twenty-five years ago. *See United States v. Davis,* 61 F.3d 291, 304 (5th Cir. 2002).

Therefore, there were enough facts to establish "reasonable cause"—the jail screening Mr. Bendann for suicidal ideation a week before trial, and Mr. Bendann's expressed suicidal ideation on the morning of trial—to make it an abuse of discretion for the district court to not order a psychiatric examination. The government's assertion that this Court should consider other "relevant considerations" do not negate the "reasonable cause" established at and ignored by the District Court.

## II.    The District Court Erred in Denying Mr. Bendann's Motion to Suppress Evidence Obtained from Electronic Devices with the Passcode 070184 because Detective Markel Conducted the <u>Functional Equivalent of Interrogation in Violation of Miranda</u>

The government argues "five reasons" why the District Court did not err in failing to suppress evidence from electronic devices with the passcode 070184. *See* Gov. Resp. Br. at 36-37.

4

## A. Mr. Bendann Exercised his Fifth Amendment Right to an Attorney

First, the government argues that Mr. "Bendann did not unambiguously invoke his right to remain silent, so Markel was free to interrogate him." Gov. Resp. Br. at 36.

## B. Even under a *De Novo* Standard of Review, Mr. Bendann Exercised his Right to an Attorney

The government challenges whether Mr. Bendann exercised his Fifth Amendment right to an attorney for the first time in this appeal. "How the decision concerning whether a defendant has unambiguously invoked his right to counsel should be reviewed has divided the courts of appeals." *Correll v. Thompson*, 63 F.3d 1279, 1286 n.6 (1995). But even if the conclusion is reviewed *de novo* and may be reached for the first time in this appeal, for the foregoing reasons, Mr. Bendann exercised his Fifth Amendment right, and the District Court's legal conclusion may be affirmed on a *de novo* basis. *See Correll*, 63 F.3d at 1286 n.6 ("We need not decide this question because whether we defer to the factual finding of the state court or review the issue *de novo*, we reach the same conclusion.")

## C. Mr. Bendann Communicated his Desire to have his Attorney Present Sufficiently Clearly that Detective Markel Understood it

This Court has held that a suspect invokes his Fifth Amendment rights "by 'articulat[ing] his desire to have counsel present sufficiently clearly that a

5

reasonable police officer in the circumstances would understand the statement to be a request for an attorney.'"*Grueninger v. Dir., Va. Dep't of Corr.*, 813 F.3d 517, 529 (2016) (quoting *Davis*, 512 U.S. at 459) (alteration in original). Immediately after Detective Markel read Mr. Bendann his Miranda rights, *see* Bodycamera Footage in Government's Supplemental Appendix at 8:01, Mr. Bendann and Detective Markel expressed the following words:

> Detective Markel: Obviously, I would like to talk to you in reference to this investigation. I think there's a lot to be learned on both ends here. Is that something you're willing to do?
> Mr. Bendann: Can I do it with my attorney? She said not to say anything to anyone, and I don't know, you know, what the circumstances . . . .
> Detective Markel: Sure, sure. So in circumstances like that, what we'll do is we'll probably just make contact with your attorney and make arrangements at a later date to set a time to speak. Okay?
> Mr. Bendann: [Mr. Bendann shakes his head yes]
> Detective Markel: Okay.

*See* Gov. Resp. Br. at 38 n. 5. Mr. Bendann articulated his desire to have his counsel present—"Can I do it with my attorney?"—and Detective Markel said "Sure, sure." Then Detective Markel proposed that we "make contact with your attorney and make arrangements at a later date to set a time to speak" and Mr. Bendann shook his head, agreeing "yes." Therefore, Mr. Bendann asked for an attorney, and Detective Markel made arrangements for facilitation of that request. *See Grueninger*, 813 F.3d at 529 (quoting *Davis*, 512 U.S. at 459).

6

Although Mr. Bendann raised his desire to speak with his attorney in the form of a question, this Court has never held that invoking Fifth Amendment rights needs to come in a particular form, because that holding would create a forbidden "ritualistic formula or talismanic phrase." *Emspak v. United States*, 349 U.S. 190, 194 (1955).

The government argues that Mr. Bendann "was exploring his options or seeking a better understanding of his rights than anything else." Gov. Resp. Br. at 38, n. 5. But Mr. Bendann did not ask "do you think I need my attorney?" or equivocate by stating "I think." Mr. Bendann already had an attorney, and knew "not to say anything to anyone," which Mr. Bendann told Detective Markel.

Critically, other cases in which the suspect equivocates about exercising his Fifth Amendment rights are when the suspect *does not currently have an attorney*:

> "Maybe I should talk to a lawyer," *id*. at 462; "I might want to talk to an attorney," *United States v. Zamora*, 222 F.3d 756, 765-66 (10th Cir. 2000); "I think I need a lawyer," *Burket v. Angelone*, 208 F.3d 172, 198 (4th Cir. 2000); "Do you think I need an attorney here?," *Mueller v. Angelone*, 181 F.3d 557, 573-74 (4th Cir. 1999); I "might want to get a lawyer then, huh?," *United States v. Posada-Rios*, 158 F.3d 832, 867 (5th Cir. 1998); "I think I want a lawyer," "Do you think I need a lawyer?," *Diaz v. Senkowski*, 76 F.3d 61, 63-65 (2d Cir. 1996); "I can't afford a lawyer but is there anyway I can get one," *Lord v. Duckworth*, 29 F.3d 1216, 1219-21 (7th Cir. 1994).

7

*United States v. Johnson*, 400 F.3d 187, 195 (2005). Here Mr. Bendann already had an attorney, and said "my attorney."

The out-of-jurisdiction cases that the government cites are easily distinguishable. In *Sechrest v. Ignacio*, 549 F.3d 789, 797 (2008), the suspect affirmatively said "Yes, I like [Officer] Bogison, he is the only one on my side, and [Officer Bogison] understands me" when consenting to talk to a police officer. *Id.* (alterations added). Although the suspect also "stated that he had spoken with his attorney and had been advised to 'keep his mouth shut,'" after the suspect said that, the police officer clarified "Does this mean you [still] want to talk to us?" and the suspect answered "Yes." *Id.* (alteration added). In *United States v. Walker*, 272 F.3d 407, 413-414 (2001), the suspect said that talking to police officers "would piss his lawyer off." *Id.* The officer there wasn't sure if the suspect exercised his Fifth Amendment rights, and clarified "talk to me, be cooperative, give us the truth" or "ask me for an attorney" and the suspect said "go ahead." *Id.* Lastly in *Coleman v. Singletary*, 30 F.3d 1420, 1422-1423 (1994), the police officer asked "do you feel that you want to have a public defender?" and the suspect responded "I don't know." *Id.* That's the ultimate equivocation, "I don't know," and is not present in this case.

Lastly, all parties below agreed—or at least did not challenge—that Mr. Bendann exercised his Fifth Amendment right. Detective Markel testified at the

8

suppression hearing that Mr. Bendann had "invoke[d] his right to have his attorney present." *See* JA 1552. The District Court concluded in its written Order that "Defendant invoked his right to remain silent." *See* JA 28. And the prosecution did not challenge that Mr. Bendann exercised his Fifth Amendment right.

### D.  Detective Markel Engaged in the Functional Equivalent of <u>Interrogation</u>

Second, the government argues that "Markel's act of holding Bendann's phone up to his face was not an 'interrogation' to begin with, because Markel had no reason to believe it would lead Bendann to enter his passcode unsolicited." Gov. Resp. Br. at 36. But this is the "functional equivalent" of interrogation. *See Rhode Island. v. Innis*, 446 U.S. 291, 301 (1980). After biometrics failed, the instruction on the iPhone instructed Mr. Bendann to enter his passcode, and Detective Markel continued holding that instruction to Mr. Bendann's face. Although Detective Markel continued holding the iPhone to Mr. Bendann's face only over six seconds, Detective Markel did not tell Mr. Bendann that the sealed warrant—which Mr. Bendann did not know the contents of and which Mr. Bendann relied on Detective Markel to explain to him—only included biometrics when Mr. Bendann reached for the iPhone.

**E.    Because Detective Markel saw Mr. Bendann's Passcode, the Act of Entering the Passcode in front of Detective Markel was <u>Testimonial</u>**

Third, the government argues that "Bendann's act of entering his passcode was not a testimonial communication that incriminated him, so his Fifth Amendment rights did not cover that act." Gov. Resp. Br. at 36-37. But entering his passcode required Mr. Bendann to exercise the contents of his mind. The focus is not on the purely physical act of entering a passcode; the focus is on *knowing* the passcode, and then entering that particular correct passcode. In a similar case, this Court held that when a suspect in custody entered their passcode in front of an officer, that act was not self-incriminating only because *the officer did not see the passcode. United States v. Oloyede*, 933 F.3d 302, 309 (2019) ("Mojisola has not shown that her act communicated her cell phone's unique passcode"). Here Detective Markel saw the passcode—or at least the first four digits, and then inferred the remaining two digits.

**F.    Entering the Passcode was not Voluntary because Mr. Bendann <u>was in Custody and Functionally Interrogated</u>**

Fourth, the government argues that "the entry of his passcode was plainly voluntary, and the exclusionary rule does not apply to evidence derived from voluntary communications." Gov. Resp. Br. at 37. But *Miranda* creates a presumption of coercion in custodial interrogations. *See United States v. Patane*,

542 U.S. 630, 644 (2004) ("statements taken without sufficient *Miranda* warnings are presumed to have been coerced"). Here Mr. Bendann was both in custody and functionally interrogated.

### III.    The District Court did not make any Factual Findings about the Inevitable Discovery Doctrine

Fifth, the government argues that "the inevitable discovery doctrine alternatively kicks in to support the denial of suppression here." Gov. Resp. Br. at 37. But the District Court made no findings of fact to support the inevitable discovery doctrine in its Order. This court is not equipped to make findings of fact on appeal, so this case requires remand to the District Court.

### IV.    The Government Withheld the Statement of a Trial Witness—Mr. Halpert—in Violation of Jencks

The government failed to produce a Jencks Act statement for Mr. Halpert, and the District Court erred by accepting the government's unsubstantiated allegation that no Jencks Act statement was produced by not conducting an in camera review.

#### A.    Mr. Bendann's Defense Counsel Laid a Foundation

The government argues that "defense counsel failed to lay a 'proper foundation' for his Jencks Act request." Gov. Resp. Br. at 56 (citation omitted). But a "court may not deny a defendant's request for production under the Jencks Act based solely on the government's unsubstantiated assertions that it has not

11

withheld any Jencks Act material, but is obligated to conduct an independent inquiry into the circumstances surrounding the creation of the materials sought, to determine whether they are in fact 'statements' of the witness under the Act." *United States v. Smith*, 31 F.3d 1294, 1302 (1994) (citations omitted).

The prosecutor made an "unsubstantiated assertion" that Mr. Halpert did not make a Jencks Act statement. *See id.* Mr. Halpert testified that a police officer "probably" took notes. JA 1230. Coupled with the fact that police officers produced Jencks Act statements for Mr. Halpert's parents, this is enough of a foundation that required the District Court to do an in camera review of investigator notes.

The government's response is that Mr. Halpert "*may have* been interviewed by different investigators on different days, and *may have* otherwise experienced different interview circumstances." Gov. Resp. Br. at 57 (emphasis added). This too is an unsubstantiated assertion.

The District Court's failure "to conduct an independent inquiry," therefore, requires a remand. *See id.*

## B. Even if Not, a Limited Remand Would Preserve Judicial Resources

Alternatively, even if the government is correct that defense counsel failed to lay a sufficient foundation for Jencks Act statement for Mr. Halpert, that could

constitute ineffective assistance of counsel, depending on defense counsel's strategic reasons and prejudice suffered by Mr. Bendann. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984) (establishing the two-prong test for ineffective assistance of counsel). Remanding now would preserve judicial resources in a habeas petition later.

### V.     The District Court Abused its Discretion Allowing Inflammatory Testimony from the Victim's Parents at Mr. Bendann's Sentencing

Admission of inflammatory testimony from the victim's parents was an abuse of discretion.

### A.     Statutory and Case Law Permitting Individuals Other than the Victim to Testify only Apply for Deceased Victims

The mother first testified about the harm she suffered. The government argues that it was admissible given 18 U.S.C. § 3553(a)(2)(A) (the court shall impose a sentence considering "seriousness of the offense"), and case law, *United States v. Payne*, 501 U.S. 808, 825 (1991); *United States v. Fulks*, 454 F.3d 410, 435-36 (4th Cir. 2006); *United States v. Moon*, 513 F.3d 527, 543 (6th Cir. 2008). *See* Gov. Resp. Br. at 61-63.

The statute 18 U.S.C. § 3553(a)(2)(A) does not define "an offense" as the collateral emotional consequences on third parties. The government does not cite any cases supporting such an argument.

13

For case law, *Payne* concerns "the admission of victim impact evidence during the *penalty phase of a capital trial.*" *Payne v. Tennessee*, 501 U.S. 808, 811 (1991) (emphasis added). *Fulks* concerns the same issue as *Payne*, and highlights that the purpose of a victim impact statement during the penalty phase of a capital trial is to show "evidence demonstrating that 'the victim is an individual whose death represents a unique loss to society and in particular to his family' . . . ." *Fulks*, 454 F.3d at 436 (citing *Payne*, 501 U.S. at 825) (omission added). Lastly in *Moon*, "the district court heard testimony from four family members of Defendant's deceased patients." *Moon*, 513 F.3d at 534. So it appears that the government's case law all involve the victims of a crime who are deceased, unlike this case.

### B. The Parents Imputed Ill-Will onto Mr. Bendann's Exercise of his Constitutional Rights

The parents also criticized Mr. Bendann for exercising his constitutional rights. The government argues that it was admissible given 18 U.S.C. § 3661 (the court shall impose a sentence considering the defendant's "character[] and conduct"), and 18 U.S.C. § 3553(a)(1) (the court shall impose a sentence considering the defendant's "characteristics"). *See* Gov. Resp. Br. at 61-63.

But the parents imputed ill-will onto Mr. Bendann's exercise of his constitutional rights, and testified that Mr. Bendann abused the victim by going to

14

trial. That victim impact testimony strays too far from the statutory goals of holding defendants accountable and goes into penalizing defendants for exercising their constitutional rights.

## VI. Mr. Bendann Suffered the Highest Form of Prejudice: the Statutory Maximum Sentence of Incarceration

The above errors are prejudicial: the District Court considered "collateral harms on a nuclear family" and then imposed the statutory maximum sentence of 35 years. J.A.1668.

15

## **CONCLUSION**

For the foregoing reasons, and the reasons presented in the appellant's opening brief, as well as such other reasons which may appear just and proper, Appellant Christopher Kenji Bendann respectfully requests that this Court: (1) dismiss all counts of the superseding indictment, (2) reverse the District Court convictions and remand for a new suppression hearing and/or trial, (3) remand to the District Court to make *Jencks* Act findings of fact, (4) vacate his sentence and remand for re-sentencing, and/or (5) any other relief appropriate under the facts and circumstances.

Dated: March 12, 2026
      Rockville, Maryland

Respectfully submitted,

/s/ Allen H. Orenberg
Allen H. Orenberg
The Orenberg Law Firm, LLC
200-A Monroe Street, Suite 233
Rockville, Maryland 20850
Tel. No. 301-807-3847
Fax No. 240-238-6701
aorenberg@orenberglaw.com

Counsel for Christopher K. Bendann
(Appointed by the Court)

## CERTIFICATION PURSUANT TO
## Fed. R. App. P. 32(a)(7)(B) and (C)

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 3,346 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2018, Times New Roman, Size 14.

Dated: March 12, 2026
      Rockville, Maryland

                             /s/
                           Allen H. Orenberg

*db*